The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good morning. We're here on case number 4210675. That's people versus Berry. Would counsel for the appellant please state your name for the record? Yes. Good morning. Good morning. My name is Rachel Kinstrand and I represent the appellant Avery Berry. Thank you. And for the appellee? My name is Allison Paige Brooks. I represent the state. Thank you. Ms. Kinstrand, you may proceed with your argument. Yes. Good morning, Your Honor. I would just also note that I will reserve my allotted time in rebuttal. I intend to focus on the first issue, but I'm happy to address the other issues that the court has questions. The shooting in this case stems from an escalating conflict between a group of teenagers, namely Marcus Jackson and his family and Shaquille and Avery and their family. Based on the record, this fighting had been going on all summer with various threats to fight being exchanged. Avery feared for his family's safety and represented at sentencing that his brother's house had been shot at. His brother's three-year-old was almost shot and his cousin was shot. Two siblings who testified corroborated this conflict and Shaquille and LaPreece provided additional information in the remanded proceedings. The ongoing conflict culminated in a fight at a birthday party and the shooting in the instant matter. Notably, multiple state's witnesses confirmed that Marcus shoved LaPreece into a glass entertainment unit and had to be kicked out of the party and subsequently showed up at LaPreece's house to fight Shaquille. While Marcus was on top of Shaquille in the midst of the fight, multiple state's witnesses heard Shaquille yell to Avery to shoot Marcus. Through a combination of trial error or ineffective assistance of counsel, the jury was precluded from hearing about the ongoing nature of this conflict. Instead, they were left with the mistaken impression that the shooting was the result of the fight at the birthday party and not part of a pattern of violent behavior against Avery and his family by Marcus and his family. The prior violent altercations were not, as the court deemed it, a new defense, but rather admissible lynch evidence in Avery's case. There was no dispute that defense of others was at issue as self-defense was raised in the answer and the state conceded that the jury should be instructed on second-degree murder based on imperfect self-defense. Evidence of the prior altercations was relevant and admissible to support the reasonableness of Avery's actions and his state of mind, namely whether Avery actually and subjectively believed a danger existed which required the use of force and whether that belief was reasonable. Had the jury heard about the ongoing nature of the conflict, it might have evaluated the reasonableness of Avery's actions in a different light. But the court's ruling deprived Avery of his constitutional right to present a defense where it is well-established that lynch evidence is relevant in cases raising self-defense or imperfect self-defense. Counsel, may I interrupt you just for a moment? At what point and during which witness did the trial court take the action that you're referring to in terms of limiting that evidence? Well, the trial court, what happened was the state cross-examined Avery and asked him whether his belief that Shaquille was in danger of being killed because Shaquille was severely injured elicited Avery's response that, no, it was based on their ongoing threats to their lives. And then when counsel tried to elicit the information on redirect, that was when the state objected and they had a sidebar regarding the admissibility of this ongoing conflict and counsel was precluded from eliciting additional information about the ongoing conflict during Avery's testimony. Well, wasn't the court's ruling in regards to that latter point in terms of the objection raised during redirect that the questioning was outside the scope of cross? Well, and my response to that is that the prosecutor opened the door to that questioning by asking the question of Avery and eliciting a response that the state didn't move to strike. So, you know, once the cat is out of the bag. The response was unresponsive. Isn't that what the court said? They could have, he could have, well, but the state didn't strike it. I mean, they, they, they could have, he could have moved to strike it as non-responsive and he didn't. So when, when defense counsel attempted to elicit it on redirect examination, I think it was proper to argue that the state opened the door and, you know, this, it, there was hints about this during the state's case during counsel's attempted cross examination of one of the witnesses that the state was going to try to prevent counsel. It's your position in a, that an unresponsive answer to a question opens the door. So to speak, is that what I think if the, if the, if the reason for denying defense, the ability to bring in lynch evidence is because of a procedural ruling, then that applies equally to the state. So if the state doesn't object to the answers being non-responsive, then I think defense counsel has the ability to redirect on that issue. But again, I also raised counsel's ineffectiveness on this issue for not filing a motion and eliminate to admit lynch evidence in the first place. I mean, I, I, I, that's why I'm raising it as sort of two issues, trial error for not for, for depriving him of right to present a defense through this procedural issue, which I, again, I think the state opened the door. The question wasn't struck whether it's non-responsive or not. I mean, it's what Avery believed at the time. And again, part of the evidence here is what Avery subjectively believed at the time of this shooting and was in issued by the answer. There was no dispute about that. And by the fact that they got a second degree murder instruction on imperfect self-defense. So, may I ask you, I'm trying to understand what you think the prior experiences added to the defendant's perception. Sometimes you'd say, well, based on, based on prior experiences, what he was seeing was, was different than what others were seeing, but wasn't what he was seeing at the moment, similar to what the prior instances would have, would have suggested. Right. I mean, so, so what, what did the other incidents add to his perception of the, of the situation that he wasn't seeing and what, with his own eyes at that moment? Well, I think two, two, there's two parts to that. The first is we have to remember these are a bunch of teenagers. I mean, these aren't a bunch of adults engaging in a bar fight. This, these are teenagers that have apparently a longstanding conflict with each other. And I think the jury was left with the impression that this was just some sort of one-off issue that this fight happened at the bar. And then it culminated in Marcus showing up at LaPreece's house. But it's, you know, based on what we have in the record, which includes Avery's statement and allocution and the evidence that was, you know, the written statements that were garnered on remand, there's a clear import that Marcus and his family, I mean, I think Shaquille said at one point in his written statement that they love guns. LaPreece described an incident where Marcus threatened to blow her mother's head off. You know, this evidence, you know, the state was permitted to argue, you know, that the gun, that the use of the gun was undercut the defense of others and the imperfect self-defense. But if the jury had heard about these other incidences, coupled with the fact that Marcus wasn't deterred by the gun, I mean, the incident that happened at the birthday party apparently involved Shaquille pulling out a gun. And, you know, Marcus's response was, you're going to have to shoot me. And when they showed up uninvited in the middle of the night at LaPreece's house, you know, equally wasn't deterred by that or a brick. They were intent on having a violent physical altercation with Shaquille and his family. So I think that, you know, the jury could have evaluated whether Avery, upon hearing his brother yell, shoot me, shoot me, shoot me, or I'm sorry, shoot him, shoot him, shoot him, meaning shoot Marcus, was a reasonable response. Because I'm concerned that the issue of the fight at the bar, you know, just didn't fully capture the scope of this conflict. And so, you know, I believe that the jury should have heard it. And then the second part of it is just, you know, what happened during the course of the case in chief for the defense. I mean, the defense just didn't present any evidence really of this. And Avery should have been entitled as part of his defense to present evidence. And counsel should have presented the evidence, whether it was by properly moving and limiting to present the lynch evidence or calling additional witnesses like Shaquille and LaPreece to corroborate this. Some of the evidence was presented, as you've acknowledged, the volunteered answer during Shaquille's cross-examination and specifically, excuse me, during defendant's cross-examination and he indicated that their lives had been threatened all summer. So that would go towards what you were talking about. Not just the fight that preceded the shooting in the bar, the fight in the bar, but he did get some of that prior background before the jury. And then also during direct examination, defendant had indicated that it had been happening all summer. Is that right? I believe that he did. I mean, I think it was incomplete. Just not enough. It wasn't fleshed out. Right, right. I think it was incomplete. And, you know, not only was it incomplete, but then the jury was never given a lynch instruction on the information that was in the record. So, you know, if the consideration is, was Avery's belief in the need to use force to defend his brother reasonable? Did he have an actual and subjective belief in the need to use that force? Ms. Ginstrand, how are you defining a lynch instruction, if you would, please? I'm defining the lynch instruction as the pattern jury instruction in 3.12x, which I set forth in its entirety in my brief in, I believe, subsection B of argument one. So it would be the pattern jury instruction that they were never given. And the jury was clearly, you know, they sent out a number, they sent out a number of questions. And the overall tenor of the trial court's view of defense counsel during the course of the proceedings in this case was, I think he had several instances where he was very unhappy with trial counsel's performance. And, you know, based on some of the questions, I wonder if the jury wasn't wise to how the trial court viewed counsel's performance. Because at one point they asked, you know, if there's a hung jury, will he be retried? And I can't help but feel that they picked up on some of the problems that trial counsel was having throughout this case. But they also, you know, they were also confused about how to determine reasonableness for the purposes of the mitigating factor of second degree murder. How could the, excuse me for interrupting, how could the court have given that instruction 3.12x here? Was it appropriate?  Well, it doesn't have to just be a conviction. It can be prior. That's the Lynch instruction. The committee comments make it clear that that's the instruction you give pursuant to people v. Lynch. And that would include these prior acts of aggression. I do think he had some sort of criminal record. It wasn't elicited in trial. But in the original briefs that I filed in the first direct appeal in this case, I did indicate that Morgan County had some sort of record for him. And obviously, you know, because counsel didn't make a Lynch motion, that didn't get included in the record. Doesn't the note say give this instruction only when evidence of the victim's prior conviction for a crime of violence has been admitted pursuant to people v. Lynch? Well, no, it does. But it has. But if you look at the full panoply of the instruction, I think it also talks about prior acts of aggression. I mean, you would give a Lynch instruction that there's the Lynch evidence, including prior acts is admissible for, you know, both showing the knowledge of the of the of Avery of these prior incidents is it's not limited to convictions. It's it's limit, you know, prior acts of violence can be included in there. And, you know, again, if defense had made a proper motion or made an offer of proof, we would have had a ruling on this issue, you know, which the court couldn't have then said, no, this is a new defense. You don't have it in front of you, do you? In terms of the the the instruction, the the actual instruction with committee comments there, if if you could just identify I don't have the I don't have this, but I have it written in my brief. OK, in this case, the state must prove beyond a reasonable doubt the proposition that defendant was not justified in using the force which he used. You have heard testimony received evidence of blank. And then in parentheses, it says prior conviction of a violent crime, prior acts of violence, reputation for violence. It is up to you to determine whether blank was convicted in parentheses, committed those acts, parentheses, had this reputation. If you determine the previous, you may consider the evidence in deciding whether the state has proved beyond a reasonable doubt that the defendant was not justified in using the force which he used. So when I read that instruction, I I think that's the standard lynch instruction. I mean, during the course of my practice, that's what I've always assumed. The pattern instruction would be given when these prior acts are at issue, irrespective of whether it involves a conviction or just prior acts or the decedent's reputation. Thank you. OK, it's on page 38 of my brief in case that's helpful to the court. So going back to my argument here again, you know, I pointed out that he was ineffective for not moving in limine to include the lynch evidence or failing to offer proof. You know, there was no apparent strategic basis for counsel's failure to do either of these things. He knew the prior acts were at issue because he raised self self-defense, which is defense of others in this case in the answer. And then he argued Marcus's violent behavior in opening statements. And he was clearly aware of the procedure for making an offer of proof because he he did so with respect to Dr. Patterson's testimony about Marcus's intoxication. So and also the record from the remanded Krankel proceedings shows that there was at least two known fact witnesses, Shaquille and LaPreece, who could have corroborated evidence of Marcus's prior behavior because both of them described a pattern of harassment and threats by Marcus and his family. But at a minimum, as I previously pointed out, based on what we already heard, which you know, the fight at LaPreece's house, the jury counsel should have requested a lynch instruction so that the jury was able to evaluate this evidence in light of the defense and in light of second degree murder being raised in this case. And the failure to do so was highly prejudicial. It deprived Avery of his constitutional right to present a defense and therefore a fair trial. The evidence of Avery's mental state was closely balanced and had the jury heard about the Marcus and his family that had been going on all summer. It might have viewed evidence that Shaquille yelled to Avery to shoot Marcus and the reasonableness of Avery's decision to shoot him in response in a different light and arrived at a different verdict. The prejudicial nature is also highlighted by the jury deliberations. The jury sent out notes asking for clarification of the standard for determining reasonableness of second degree murder. And had they been given the lynch instruction, they would have been properly told that they could consider Marcus's prior violent acts in determining whether Avery was justified in his use of force. Instead, they were left wondering how to evaluate Avery's actions and whether they were reasonable. It was also compounded by the prosecutor's closing argument in which he wrongly argued that Shaquille and Avery brought themselves to the fight, that Avery killed Marcus in was a willing participant, and that he had to prove Shaquille was in mortal danger to show imperfect self-defense. So in sum, through a combination of trial error or ineffective assistance of counsel, Avery was deprived of fair trial through the improper exclusion of lynch evidence and the failure to request a lynch instruction based on what was already heard by the jury. And Avery asked this court to reverse his conviction and remand for a new trial or grant any of the other relief requested in his oral brief. Thank you, Ms. Kinstrand. You will have rebuttal. Ms. Brooks, you may proceed with your argument. Thank you, Your Honors. May it please the court and counsel, I'm Allison Page Brooks. I'm representing the people in this case. The defense has to adhere to the rules of evidence in order to claim that they were to deny the right to present a defense. And because the defense was asking questions that were outside the scope of cross-examination, they're not allowed to, or outside the scope of direct as well when you talk about the pathologist's testimony about the cause of death. So the toxology evidence, for example, was not relevant to the cause of death, so therefore it was outside the scope of the pathologist's direct testimony. And with respect to the defense, the defendant interjected this idea that he was threatened all summer, that that was non-responsive, so therefore it was outside the scope of what the prosecutor asked on its cross-examination of the defendant's testimony, and the defendant doesn't cite any authority to show that the failure to move to strike a non-responsive answer somehow opens the door. And if this is all coming in under plain error, then they also have to show clear, obvious error as well. So the defense also is claiming ineffective assistance of counsel, and one problem with that is also, for example, the failure to make an offer of proof. The problem with that is it's hard to show prejudice about a failure to make an offer of proof when you don't have an offer of proof to show what the defense didn't present. For example, the claim that the defendant should have, and the defendant could have put some of this stuff in as lynch evidence in the case in chief, but just did not, still does claim ineffective assistance of counsel. The record on appeal, because this is a direct appeal, is going to have to show what the defense should have put in evidence, and because it's not in the record, this is the type of thing that would be more properly brought in a post-conviction petition. So therefore, the defendant on this record hasn't shown sufficient prejudice because we just don't simply know a lot of these details the defense says should have been brought out, and the fact is the jury already heard the defendant say that their lies were threatened and still convicted him, rejecting the credibility of his subjective beliefs because of the devastating cross-examination, and also there's the circumstances where there was a willing fight, and of course, a lot of the lynch evidence goes to the aggressive victim, it was undisputed, went to this place looking for a fight after the incident at the party, so it wasn't really disputed that the victim was aggressive here, but it's also the fact that the defendant went out, the defense brother went outside to become a willing participant in an even unarmed fistfight, but at some point decides that they don't want that anymore and wants the defendant to do a shooting. It's the defendant who interjected the weapon into this without seeing any weapon or seeing even any injuries that the victim was suffering, and only because the defense brother directed him to shoot, he shot, so therefore, I mean, there's no credible claim of defensive others when he knew that his brother willingly got into a fight, and also the brother instigated the physical portion of the fight by throwing a brick at the victim, so therefore, anyone who sees that cannot credibly, subjectively believe that they have a claim of defensive others in that sort of situation where there's a willing fistfight provoked by the brother throwing a brick, and also the defendant fled, he didn't attend to injuries, stayed to seek medical help for him, instead, he stayed away from the scene for 52 days and denied knowing what happened to the gun, and all this brought out a cross-examination in ways in which the jury could assess the credibility of his claims, and finding them lacking in certain respects can disregard the entirety of his testimony, and so this is not even a factually close case. The defendant did testify about his subjective beliefs of fear, but that just simply was not accepted as credible by the jury, and therefore, there's nothing really, in these circumstances, that would even make that a close case, so the defendants cannot even meet the first prong element of the claim error to show that the evidence was factually close. So, with respect to the instruction, the Lynch instruction 3.12x, it's not a critical instruction, it's not the type of thing where there's no prejudice from the lack of failure to tender the instruction, so the claim of ineffective assistance of counsel is not succeeded because there's no showing of prejudice for the lack of instruction, and so... Do you agree that the instruction may be given where there's evidence of a prior aggressive character, but not convictions? Yes, I believe that's what it is. Prior conviction is only one of the bracketed things. It doesn't have to be a prior conviction, but part of this issue is, again, it goes back to the fact there's no serious dispute as to whether the victim was aggressive here. The victim was obviously coming over there to engage in a fight, and there was also plenty of abundant Lynch evidence in the form of what happened at the previous incident where the victim was ejected from the party. So, I mean, and that's why it's really any additional details wouldn't have made any difference, and even the instruction itself wasn't important because this case didn't really come down to whether the victim was aggressive or not because it was admitted by the prosecutor the victim was aggressive, so that's why the instruction really wasn't that important. So, for those reasons, the state would request this court to affirm the conviction. Thank you. The record reflects the defendant was dressed in street clothes as his right to appear in street clothes because we're basically trying to make sure that the jury doesn't make inappropriate inferences about his presumed innocence. Was it error for the prosecutor to point out that he's in street clothes, but he's actually in jail? I'm not sure. I don't remember the reference in the record to the part of the closing argument. He says some of our witnesses were in jail. We brought them in in their jail uniforms. A defendant who testified he's currently in jail. What do you do when you have a guilty client? That's what you do. You put a tie on him. You is that proper argument? No, your honor. It's objectionable. There were some other matters in the closing argument that were also objectionable. Of course, the defendant when the defendant is unable to show a factually closed case that have to show a combination of errors in closing arguments that would deprive the defendant of a fair trial in order to receive a second prong plane error reversal, which is an extremely hard standard to meet a very rare type thing. So they'd have to show a combination of multiple things like that that would create an extreme level of prejudice such that even if the case wasn't factually closed, the defendant is entitled to a fair trial and that would have to be remedied in order to preserve the reputation of the judicial process. So that's essentially the standard the defendant would have to meet to meet in order to receive a reversal on matters of closing argument to which are improper, but were not objected to. And also they also claim ineffective assistance of counsel for failing to object and preserve matters for review. Again, they have to show a reasonable probability there would be a different result and they have to show prejudice from that. Thank you. Thank you, your honors. Any other questions? No. Okay. Is there any rebuttal? Yes, your honor. I just to on on the lynch evidence issue. I do think that this evidence was closely balanced on the disputed issue of Avery's mental state. Again, I would point out that the jury was clearly concerned about it. They had some questions about how to evaluate reasonableness. And here you had no sort conflicting evidence about this fight and Shaquille yelling shoot him Avery shoot him. That was all coming from the state's witnesses. But you didn't have an adequate response through Avery's case. And it wasn't sufficient to just say, yes, he hinted at there being ongoing conflict all for for not recognizing that. And again, the issue isn't just the responsiveness, the procedural issue, he also claimed it was a new defense. And since the state is agreeing that this is proper lynch evidence, it should have come in, he should have been permitted. It's not that it's a new defense, it's relevant evidence to the issues that are in dispute in the case. And so in order for the jury to get a full picture of what was going on, and again, there are a bunch of teenagers, you know, this is it is a cumulative. I don't believe that was already introduced. Well, I don't believe it's cumulative. I think I think hinging it just on this party, if you don't know about these prior incidents, and and you know, we have ample evidence now, because we have these two additional fact witnesses on remand that are adding additional information. I mean, it's not that they had every reason to believe that Marcus might have had a gun if you credit Shaquille's testimony that Marcus and his family love guns and hurt people. And LaPreece's claim that he threatened to, you know, use a gun to blow his mother's head off. So you have, you have ample corroborating evidence here, that in this issue can be considered in this appeal. There, this, this is right for adjudication in this case. And I don't think it needs to be whether or not, you know, Shaquille was a willing participant, which is really an argument that, you know, he was the initial aggressor. Shaquille was rightfully at LaPreece's house, he had every right to be there, and he didn't have a duty to escape. Marcus and his brother showed up in the middle of the night intent on this fight. You know, a gun wasn't going to deter Marcus, the brick throwing didn't deter him. I think you can rightly view the issue of him throwing a brick from the top of a car as an effort to sort of escape and try to get away. I mean, they came and knocked on his door and told him to come out and that they were going to fight him. One of Marcus's brothers said, I'm gonna beat the expletive out of you. So, you know, I think, I don't think there's, I don't think that's a meritorious argument that you can't consider either defense of others or second degree murder because Shaquille was involved in the fight. He had a right to be there and he didn't have a duty to retreat. You know, and also, again, I don't think that the fact that they heard about this birthday party makes this evidence any less relevant. This additional ongoing conflict was really part of the full story and the jury, the jury just didn't hear the full story in this case, and I do think it affected their ability to analyze this evidence. You know, had they heard of the ongoing threats that were made and, you know, in the defense's case in chief and not just from the mouths of the state's witnesses, and then not left with the impression that the state didn't prove its case through the prosecutor's comments, which, you know, said they would have had to prove, misadvised the jury that the defense would have to prove that Shaquille was mortally injured, or, you know, the number of other comments that I identified as improper in my opening brief, they were left with that mistaken impression that was the last thing they heard in closing argument. So, I think had they heard, you know, the entirety of the evidence in this case, they could have likely arrived at a different verdict in a case, again, involving a 19 year old and a number of young people that, you know, just really unfortunate, and I think in some it denied him his right to a fair trial, and I ask this court to remand this matter for a new trial. Okay, thanks to both of you for your arguments. The case is submitted, and the court stands in recess until further call.